Case 4:20-cv-05153-EFS    ECF No. 18    filed 10/01/21    PageID.774    Page 1 of 17

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PATRICIA C.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]

        Defendant.

No. 4:20-CV-05153-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Plaintiff Patricia C. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by improperly determining that she did not have any medically determinable severe impairments and ending the five-step

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

disability analysis at step two. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 15, and denies the Commissioner's Motion for Summary Judgment, ECF No. 16.

### I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied.[13] If the claimant cannot perform past work, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application alleging a disability onset date of December 1, 2017.[18] Her claim was denied initially and upon reconsideration.[19] An administrative hearing was held by video before Administrative Law Judge Marie Palachuk.[20]

When denying Plaintiff's disability claim, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2017.

---

[14] *Id.* § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 123-29.

[19] AR 61-63; AR 65-67.

[20] AR 12-25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had not engaged in substantial gainful activity since December 1, 2017, the alleged onset date, through her date last insured of December 31, 2017.
- Step two: Plaintiff did not have any medically determinable severe impairments.

The ALJ gave the following reasons for her conclusion at step two:

- Plaintiff's symptom reports—including that she cannot be on her feet for more than a few hours and needs breaks due to severe lumbar spine—were not consistent with the objective medical evidence for the narrow period between the alleged onset date (December 1, 2017) and Plaintiff's date late insured (December 31, 2017) or even with evidence from the year prior because 1) Plaintiff's care consisted primarily of medical visits for pain medication refills and the treatment records do not contain significant objective findings; 2) Plaintiff's records indicate she was having great results with her pain medication; 3) Plaintiff had normal gait and normal range of motion at some appointments; and 4) Plaintiff's "reasonably high-functioning activities of daily living," including being a caregiver for her elderly mother, were "not supportive of her allegation of total disability."[21]

---

[21] AR 19-20.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- The medical opinions given by Plaintiff's treating and reviewing physicians did not establish disability as of the date last insured.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

---

[22] AR 1-6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

### IV.    Analysis

**A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred at step two by failing to conclude that she had even one medically determinable severe impairment.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[31] This involves a two-step

---

evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (cleaned up).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[31] 20 C.F.R. § 404.1520(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

process: 1) determining whether a claimant has a medically determinable impairment and 2), if so, determining whether that impairment is severe.[32]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[33] Rather, impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[34] "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[35] "Objective medical evidence means signs, laboratory findings, or both."[36] In turn, "[s]igns means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)."[37]

> Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological

---

[32] *Id.* § 404.1520(a)(4)(ii).

[33] *Id.* § 404.1521.

[34] *Id.*

[35] *Id.*

[36] *Id.* § 404.1502(f).

[37] *Id.* § 404.1502(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests.[38]

Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[39]

If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment, the ALJ must then determine whether that impairment is severe.[40]

The step-two severity threshold is a de minimis standard.[41] "The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is 'not severe.'"[42] A medically determinable impairment is *not* severe if, and only if, the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[38] *Id.* § 404.1502(c).

[39] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[40] *See* Social Security Ruling (SSR) 85-28 at *3.

[41] *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

[42] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

work."[43] Stated differently, an impairment is not severe if it has no more than a minimal effect on a claimant's physical or mental ability to do basic work activities, which include the following: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling.[44] Because step two is simply a "screening device [used] to dispose of groundless claims,"[45] "[g]reat care should be exercised in applying the not severe impairment concept."[46]

Here, the ALJ found Plaintiff had the medically determinable impairment of chronic back pain.[47] Yet, the ALJ found this impairment was not severe because Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months." In finding that Plaintiff did not have a severe impairment, the ALJ rejected Plaintiff's symptom reports and certain medical opinions. For two reasons, the ALJ's analysis is erroneous.

As an initial matter, the threshold for severity used by the ALJ—"significantly limited"—is incorrect. As the Ninth Circuit explained in *Yuckert v. Bowen*, "numerous appellate courts have imposed a narrow construction upon the

---

[43] *Id.*

[44] 20 C.F.R. § 404.921(a) (2010); *see* SSR 85-28 at *3.

[45] *Smolen*, 80 F.3d at 1290.

[46] SSR 85-28 at *4.

[47] AR 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

severity regulation."[48] In *Yuckert*, as here, the ALJ relied on 20 C.F.R. § 404.1520(c), which provides that a claimant must have an impairment or combination of impairments that "significantly limits" the ability to do basic work activities. The Ninth Circuit explained, however, that in so relying, the ALJ had ignored that:

> [The current definition for not-severe impairment] must be read in light of the earlier regulations defining severe impairment adopted in 1968, for, as explained by the Secretary in the Federal Register, the new terminology was intended solely to clarify, not to change, the definition of "severe impairment." The change in language was not accompanied by "an intention to alter the levels of severity for a finding of disabled or not disabled." 43 Fed. Reg. 55357–55358. In the 1968 regulations, non-severe impairment is described as, "... a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." 20 C.F.R. § 404.1520(a) (1968).[49]

The Ninth Circuit then went on to note the Secretary's subsequent promulgation of SSR 85-28, which provides that "an impairment is found not severe ... when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect on an individual's ability to work.*"[50] The Ninth Circuit stated that, while it was not deciding that SSR 85-28 applied retroactively to Yuckert's claim, "[t]he Secretary's interpretation in Ruling 85–28 suggests that, even today, the severity

---

[48] 841 F.2d 303, 306.

[49] *Id.* (quoting *Estran v. Heckler*, 745 F.2d 340, 340–41 (5th Cir. 1984)).

[50] *Id.* (quoting SSR 85-28) (emphasis in original).

regulation should be applied in light of the 1968 regulation."[51] Because the ALJ in *Yuckert* "relied solely on the wording of section 404.1520(c) to require that Yuckert show her impairments significantly limited her ability to work," the Ninth Circuit held "the ALJ misapplied the severity regulation to Yuckert's claim because he did not consider the 1968 regulation."[52] The Ninth Circuit vacated the judgment of the district court and remanded the matter "for further proceedings to apply the proper standard for step two of the evaluation process."[53]

Here, as in *Yuckert*, the ALJ's analysis is erroneous, as the ALJ appears to rely solely on the language of § 404.1520(c) in holding that Plaintiff did not have a medically determinable severe impairment because her ability to work was not "significantly limited." In requiring Plaintiff to show a "significant limitation," the ALJ ignored or overlooked the very narrow construction of the severity regulation. The correct severity standard, as explained in *Yuckert*, SSR 85-28, and subsequent cases, is whether Plaintiff has an impairment (or combination of impairments) that has more than a minimal effect on her ability to do basic work activities.[54] If so, Plaintiff has a "severe impairment," and the sequential analysis should proceed beyond step two. Because the ALJ demanded from Plaintiff more than the law

---

[51] *Id.* at 306-07.

[52] *Id.*

[53] *Id.* at 307.

[54] SSR 85-28 at *3; *see also, e.g., Webb*, 433 F.3d at 687; *Smolen*, 80 F.3d at 1290.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

requires with respect to showing a "severe" impairment, the case must be remanded.

The ALJ's analysis is flawed for an additional reason. As noted above, at step two of the disability analysis, the focus is on whether *objective medical evidence* establishes that a claimant has a severe, medically determinable impairment.[55] Indeed, "[a]t the second step of sequential evaluation … medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."[56] The opinion of a treating physician, or any physician, that a claimant has a severe impairment cannot alone establish the existence of such an impairment.[57] Likewise, a claimant's symptom reports cannot alone establish that she has a severe impairment.[58] Because medical opinions and symptom reports cannot establish a severe impairment, the rejection of medical opinions and symptom reports also cannot establish the absence of a severe impairment. Here, the ALJ should have focused on the objective medical evidence in the case—not the medical opinions or Plaintiff's symptom reports, as rejecting one or both of these things is not enough to show the absence of a severe impairment.

---

[55] 20 C.F.R. § 404.1521.

[56] SSR 85-28 at *4.

[57] *See id.*

[58] *See id.*

Having said that, the ALJ did mention some medical evidence while discussing her rejection of Plaintiff's symptom reports. The ALJ stated that:

> The few physical examinations that exist prior to December 2017 are largely unremarkable. In March 2017, the claimant demonstrated normal gait, normal range of motion in all joints although there was tenderness to palpation of the scapula, spine, and bilateral shoulders, but without muscle atrophy, swelling, erythema, ecchymosis or signs of instability (Exhibit 5F/11-12). In May 2017, she demonstrated normal gait, normal range of motion in all joints, no muscle atrophy, swelling, erythema, ecchymosis or signs of instability (Exhibits 2F/33-34; 5F/14-15). In July 2017, exam was with some limited twisting, turning, and bending secondary to some low back pain/discomfort, and also some tenderness around the SI joint and paravertebral processes which seemed to be worsened with bending; otherwise there was no obvious muscle atrophy, swelling, erythema, ecchymosis, tenderness or signs of instability, motor and sensation was intact, she had normal strength and reflexes, and gait was normal (Exhibit 2F/28; 5F/25-26). In September 2017, she demonstrated limited range of motion due to multiple joint pain/discomfort, but minimal swelling and tenderness, normal motor and sensation, normal strength and reflexes, normal gait (Exhibits 2F/27; 5F/28-29).

While this evidence was mentioned, it was not discussed in relation to the existence or absence of a severe impairment. Rather, as noted above, the ALJ cited this medical evidence as a reason to discount Plaintiff's symptom reports. Again, a claimant's symptom reports cannot establish or disprove the existence of a severe impairment at step two of the disability analysis. Moreover, even if medical evidence shows that a claimant's symptoms are not as significant as alleged, that does not mean the same medical evidence shows the absence of a severe impairment. In other words, the ALJ's analysis of the medical evidence in the context of Plaintiff's symptom reports cannot be transplanted into the step-two analysis.

The ALJ's primary reliance on medical opinions and symptom reports in her evaluation of whether Plaintiff had one or more severe impairments is an additional reason the case must be remanded for reconsideration.

B.     **Remand for Further Proceedings**

Plaintiff urges this Court to conclude that she has a medically determinable severe impairment and asks the Court to direct the ALJ on remand to begin the sequential analysis at step three. This Court, however, believes the ALJ should be the first to conduct factfinding under the appropriate legal standard.

On remand, therefore, the ALJ is instructed to reevaluate the sequential analysis, beginning at step two. As noted herein, the ALJ must be mindful that step two is a "screening" step that sets forth a de minimis standard meant to dispose of groundless claims. On remand, the ALJ may end the sequential analysis at step two "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."[59] The ALJ's step two determination must be "clearly established by *medical evidence*."[60] The ALJ must also be mindful that several impairments can combine to produce a severe impairment.[61] The ALJ, therefore, must determine whether Plaintiff has a combination of impairments that together amount to a severe impairment because

---

[59] *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290).

[60] *Id.* at 687 (quoting SSR 85-28 at *3) (emphasis added).

[61] SSR 85-28 at *3.

they combine to produce more than a minimal effect on Plaintiff's ability to perform basic work activities. The ALJ shall further develop the record if necessary and, if the ALJ cannot clearly determine the effect of Plaintiff's impairment or combination of impairments on her ability to do basic work activities, the ALJ shall not end the sequential evaluation at step two but shall instead proceed to the remaining steps of the analysis, as appropriate.[62]

### V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

---

[62] SSR 85-25 at *4 ("If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.").

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 1st day of October 2021.

                s/Edward F. Shea
                EDWARD F. SHEA
            Senior United States District Judge